NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #052039**
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSHUA RYAN SPARKS,<br><br>**Defendant.** | 3:22-cr-00393-HZ<br>3:13-cr-00570-HZ-01 (SRV)<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

Defendant committed the instant drug trafficking offense in June 2022 while on federal supervision for a 2014 drug trafficking conviction. PSR ¶ 45. This will be his third felony conviction for dealing methamphetamine. Because of his serious criminal history as a recidivist drug trafficker, his constant illegal possession of firearms, and his habitual refusal to abide by the conditions of supervision, this Court should follow the jointly recommended sentence of 70 months' imprisonment with four years of supervised release on his new case, to be followed by a consecutive 30-month revocation sentence on his SRV case.

/ / /

**Government's Sentencing Memorandum**  **Page 1**
Revised Aug. 2019

I.  **The Offense Conduct**

In June 2022, investigators with the Multnomah County Sheriff's Office Special Investigations Unit (SIU) received information that Joshua Sparks (defendant) was involved in drug trafficking while armed. A records check revealed that defendant was currently in warrant status in his federal supervised release case. PSR ¶ 13.

On June 9, 2022, investigators learned defendant would be in the area of Denny's at SE 105 and SE Stark. An SIU sergeant went to Denny's and saw defendant walking away from the driver's door of a parked silver Audi. PSR ¶ 14. Defendant went inside the Denny's with another male and met with multiple others in the video poker room in the back. Defendant and the other male were hyper vigilant and focused on a man who arrived, parked, and entered the Denny's. Soon after his arrival, defendant exited the Denny's with the man and they walked towards the silver Audi. *Id*.

The SIU sergeant believed he was observing behaviors consistent with drug dealing. Knowing defendant's drug-dealing history, his status as an unlicensed driver, his history of eluding police, and the current suspected drug dealing activity, the deputies decided to arrest defendant on his SRV warrant before he could get into the Audi. Defendant tried to run away from arresting officers, and he threw something that turned out to be a key fob for the Audi. PSR ¶ 15. When asked for consent to search the vehicle, defendant refused consent and denied having anything to do with the vehicle. *Id*. Post *Miranda*, defendant made statements acknowledging that he possessed drug trafficking evidence inside the vehicle. PSR ¶ 17.

Later, deputies executed a search warrant on the Audi. PSR ¶ 18. Inside, they found a handwritten title transfer document from "John Smith" to Joshua Sparks. They also found digital

gram scales in driver's side door pocket. On the back seat, they found a black leather satchel/purse containing a large Ziplock bag of meth and two firearms: a .45 caliber Tisas and a 9mm Glock 19 (stolen in 2019). PSR ¶ 18. Lab testing on the meth confirmed the presence of 167 grams of methamphetamine. *Id*. According to drug experts, this quantity of methamphetamine found with firearms and digital scales is consistent with a dealer quantity of methamphetamine.

Investigators swabbed the two firearms for DNA. Lab testing revealed that Joshua Sparks could not be excluded as a contributor to the mixed DNA profiles found on each firearm. PSR ¶ 19.

## II.     The Charges & Guilty Plea

On November 8, 2022, a federal grand jury returned an indictment charging defendant with (1) Possession with Intent to Distribute over 50 grams of a meth mixture in violation of 21 U.S.C. 841(a)(1), and (2) Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1. On January 10, 2023, defendant pled guilty to this offense pursuant to a plea agreement. ECF No. 15. By resolving his case this early, defendant received two charge-bargain concessions: (1) the government did not proceed with a 924(c) charge, and (2) the government did not pursue purity testing on the methamphetamine which would have produced a higher 10-year mandatory minimum.

## III.    Guideline Computations

The government agrees with the PSR's criminal history and guideline calculations. There are no disputed guideline issues. Defendant starts at a base offense level of 24 under U.S.S.G. § 2D1.1(a)(5) because he had 167 grams of a methamphetamine mixture (between 50-200

grams). PSR ¶ 25. There is a 2-level increase for possessing firearms in connection with this drug trafficking offense. PSR ¶ 26. A 3-level reduction for acceptance results in a total offense level of 23. PSR ¶¶ 32-34. At TOL 23, criminal history category of IV, defendant's advisory guideline range is 70-87 months. Consistent with the joint recommendation in the plea agreement, the Probation Office recommends a low-end guideline sentence of 70 months' imprisonment, followed by a four-year term of supervised release. PSR Sentencing Recommendation at 1.

### IV. Government's Recommended Sentence

The government recommends as a reasonable sentence under the 3553(a) factors a sentence of 70 months' imprisonment. Such a sentence accounts for the nature and seriousness of the offense, as well as defendant's serious criminal history that earns him a CHC IV. A 70-month sentence promotes respect for the law, acts as a deterrent, avoids unwarranted sentencing disparities among similarly situated defendants, and most importantly, protects the public from other crimes that defendant will undoubtedly commit. Any lower sentence will not, for a number of reasons.

Supervision has failed to stop defendant from committing further offenses involving drugs and guns. His prior supervision terms have involved numerous violations and revocations. At age 44, he continues to make the same bad decisions regarding methamphetamine, firearms, and hanging out with the wrong people in the wrong places. The government agrees with the defense that this defendant needs drug treatment. The problem is that defendant has yet to engage with the treatment he was offered while out of custody. PSR ¶ 45. It is a positive sign that he does appear to be engaged in treatment while in custody (PSR ¶¶ 69-70), but the true test will be what he decides to do when he is released from prison in this case. Actions will speak louder

than words.

For now, the only thing that will protect the community and prevent defendant from committing additional offenses is a lengthy prison term. The overall 100-month sentence recommended by the Probation Office is just such a sentence. It is the sentence this Court should impose.

V.    Conclusion

Based on the foregoing, the government recommends that this Court impose a sentence of 70 months' imprisonment, a four-year term of supervised release, and a $100 statutory fee assessment on his new case, and a consecutive 30-month revocation sanction in his SRV case.

Dated: March 15, 2023

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Leah K. Bolstad*
LEAH K. BOLSTAD, OSB #052039
Assistant United States Attorney